IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

|  |  |
|---|---|
| ELIZABETH CARIAS-GARCIA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. 1:12-CV-00337 |
| ) | |
| UNITED STATES OF AMERICA, and ) | |
| DAVID W. PEPPLE, M.D. ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion to Summary Judgment filed by Defendant United States of America on February 19, 2016 (DE #55). For the reasons set forth below, Defendant's motion for summary judgment (DE #55) is **GRANTED.** The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE.**

BACKGROUND

Plaintiff Elizabeth Carias-Garcia's infant passed away in utero in 2011. Plaintiff subsequently filed this action against Defendant United States of America, Neighborhood Health Clinics, Inc. ("NHC"), and Dr. David W. Pepple, M.D. She seeks monetary damages for the alleged negligence in the pregnancy care she received from Dr. Pepple and NHC that allegedly resulted in the death of her infant. Plaintiff brings her claim against Defendant

as a result of the actions of Dr. Pepple and NHC, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, *et seq*.[1] Defendant now moves for summary judgment, asserting that it is not liable under the FTCA for acts or omissions of Dr. Pepple because Dr. Pepple was not an employee of NHC. The motion has been fully briefed and is ripe for adjudication.

DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences

---

[1] Plaintiff later amended her complaint to remove NHC as a defendant. (DE #42.) In July 2016, Plaintiff dismissed her claims against Dr. Pepple in this action. (DE #67.) Thus, the United States of America is the sole remaining defendant in this action.

in that party's favor.  *See Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading but rather must "marshal and present the court with the evidence she contends will prove her case."  *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).  "[I]nferences relying on mere speculation or conjecture will not suffice."  *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted).  If the nonmoving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper.  *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Facts

From April 2009 through November 2009, Plaintiff received treatment at the NHC in Fort Wayne, Indiana, for her pregnancy.  Plaintiff alleges that Dr. Pepple provided her care and treatment during her pregnancy.  Plaintiff was diagnosed with gestational diabetes, and claims that she consistently complained of very little fetal movement during the end of her third trimester.  On November 13, 2009, Dr. Pepple performed an emergency C-section on Plaintiff at St. Joseph Hospital.  Plaintiff's baby was stillborn, and appeared to have passed away several days before the delivery.

In 2011, Plaintiff presented a Notice of Federal Tort Claim to NHC and the United States Department of Health and Human Services ("HHS"). HHS denied Plaintiff's administrative tort claim in 2012. Plaintiff also filed a medical malpractice complaint against NHC and Dr. Pepple before the Indiana Insurance Commissioner ("IIC"). On January 12, 2015, the IIC Medical Review Panel found that evidence supported the conclusion that NHC and Dr. Pepple "failed to comply with the appropriate standard of care," and that the alleged conduct "was a factor of the resultant damages, but the panel [was] unable to determine the extent of any disability or permanent impairment."[2] (DE #62-1 at 3.)

Plaintiff brought this lawsuit against Defendant based on the alleged actions of NHC and Dr. Pepple. NHC is a federally deemed community health center, and is a not-for-profit corporation organized and existing under the law of the State of Indiana. Dr. Pepple is a licensed family practice physician in Fort Wayne, Indiana. NHC never employed Dr. Pepple, never had a personal contract with Dr. Pepple, and never compensated him for his services at NHC. Dr. Pepple was employed by the Northeast Regional Family Practice, P.C. ("Northeast Regional"), an entity independent of NHC.

---

[2] Defendant notes that it did not participate in the proceeding before the IIC because NHC is a part of the Public Health Service as a federally deemed community health center, and as such, is not subject to the IIC's Medical Review Panel.

In 2000, Dr. Pepple entered into an Employment Agreement with the Fort Wayne Medical Education Program ("FWMEP"). FWMEP is part of the Indiana University School of Medicine, and provides training to family practice resident physicians. According to the Employment Agreement, Dr. Pepple was employed as FWMEP's Assistant Director. His duties included serving as clinical instructor and coordinator of obstetrical services and education for FWMEP's family practice residency, supervising resident obstetrics, and supervising the outpatient obstetrical clinic at NHC. (DE #56-6 at 2, 7.) Dr. Pepple and the FWMEP's residency program had their own medical malpractice insurance.

Prior to October 5, 2009, NHC and FWMEP operated under a Memorandum of Understanding ("MOU"). Under the MOU, FWMEP resident physicians provided obstetrical services for all NHC prenatal patients, and NHC provided nursing, support personnel and equipment to support the physician services. On or about October 5, 2009, NHC and FWMEP entered into a Program Letter of Agreement between FWMEP's family medicine residency program and NHC ("Program Letter"). (DE #56-8.) Pursuant to the Program Letter, FWMEP assigned resident physicians to provide prenatal care and deliveries to NHC patients. (DE #56-2 at ¶¶4-5.) NHC provided nursing, support personnel and equipment to support the physician services. The Program Letter identifies Dr. Pepple as "Local Director" of the "Participating Site – [NHC]," and Dr. James E.

Buchanan as the Program Director of Family Medicine of the "Sponsoring Institution," FWMEP. (DE #56-8 at 1.) Dr. Pepple and Dr. Ravi Raju were responsible for supervising the resident physicians while they were rotating at NHC. Drs. Pepple and Buchanan were responsible for the day-to-day activities of the resident physicians. FWMEP resident physicians were to provide all prenatal care and deliveries for NHC patients under the supervision of Drs. Pepple, Buchanan, and Raju. (DE #56-2 at ¶5.)

Analysis

Sovereign Immunity

As Plaintiff acknowledges, the only question at issue here "is whether the USA may be held liable for Dr. Pepple's actions while he was providing medical services at [NHC]." (DE #62 at 4.) Defendant argues that it is not liable under the FTCA for the actions or omissions of Dr. Pepple because Dr. Pepple was not acting as an employee of the federal government. The "inquiry of determining whether one is an 'employee of the government'" under the FTCA is "a pure question of law and a matter of statutory interpretation." *Ezekiel v. Michel*, 66 F.3d 894, 899 (7th Cir. 1995) (citations omitted).

"The Federal Government cannot be sued without its consent." *United States v. Navajo Nation*, 556 U.S. 287, 289, 129 S. Ct. 1547, 173 L. Ed. 2d 429 (2009). The FTCA "is a limited waiver of sovereign immunity, making the Federal Government liable to the

same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813, 96 S. Ct. 197, 148 L. Ed. 2d 390 (1976). This waiver of sovereign immunity "does not include any contractor with the United States." 28 U.S.C. § 2671; *see Alinksy v. United States*, 415 F.3d 639, 645 (7th Cir. 2005) ("Congress expressly granted jurisdiction for suits brought against the United States for its employees' conduct, and not the conduct of contractors."). Although the FTCA generally covers only employees of the federal government, under the Federally Supported Health Centers Assistance Act of 1992, Public Law No. 102-501, and the amended Federally Supported Health Centers Assistance Act of 1995, Public Law No. 104-73, 42 U.S.C. § 233(g)-(k) ("FSHCAA"), federally supported health centers, their employees, and certain contractors are deemed to be employees of the Public Health Service for the purpose of medical malpractice suits. 42 U.S.C. § 233(g)(1)(A). Once an individual is deemed an employee of the Public Health Service, the FSHCAA provides the exclusive remedy for alleged malpractice by such employee while acting within the scope of his employment. 42 U.S.C. § 233(a).

It is undisputed that NHC is deemed to be an employee of the Public Health Service and is eligible for FTCA coverage under the FSHCAA. The question is whether Dr. Pepple is also deemed to be an employee of the Public Health Service as a result of his

services at NHC. "[A]ny officer, governing board member, or employee of [a public or non-profit private entity receiving federal funds], and *any contractor* of such an entity *who is a physician* or other licensed or certified health care practitioner" shall be deemed to be an employee of the Public Health Service. 42 U.S.C. § 233(g)(1)(A) (emphasis added). Section 233(g)(5) of the FSHCAA provides that an individual may be considered a contractor of an entity only if:

> (A) *the individual* normally performs on average at least 32 ½ hours of service per week for the entity for the period of the contract; or
>
> (B) in the case of *an individual who* normally performs an average of less than 32 ½ hours of services per week for the entity for the period of the contract, *the individual* is a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology.

42 U.S.C. § 233(g)(5) (emphasis added). Defendant argues that because the FSHCAA's waiver of sovereign immunity with respect to a contractor is limited to "individual" physicians "who" have contracted with health centers, the waiver does not extend to individual physicians who perform services at health centers pursuant to contracts between the health centers and the physician's employer.

In *Dedrick v. Youngblood*, the Eleventh Circuit strictly interpreted "the personal pronoun 'who' [in Section 233(g)] as identifying only individual physicians who contract with eligible

entities, not organizations or foundations who contract with eligible entities." 200 F.3d 744, 746 (11th Cir. 2000) (requiring strict construction of the FSHCAA because "inclusion of contractor liability serves as an expanded waiver of sovereign immunity"). The Eleventh Circuit explained that "[d]etermining the contractual relationship of the parties is essential to properly interpreting the statute." *Id*. at 745. It held that a doctor who provided services to an FSHCAA-eligible clinic through an employment contract he had with a separate foundation did not qualify as a contractor under the FSHCAA because he never contracted directly with the clinic. *Id*. at 747. "The statutory expansion of government liability under the FTCA does not apply in this case because there is no direct contractual relationship between the eligible entity and the physician." *Id.; see Cruz v. United States*, 70 F. Supp. 2d 1290, 1295-96 (S.D. Fla. 1998) ("a qualified individual first must have contracted with a covered entity" to extend FTCA coverage to individual). Defendant insists that the FTCA does not extend coverage to Dr. Pepple because he did not contract directly with NHC.

Plaintiff concedes that "if Dr. Pepple were an employee of FWMEP, the holding in *Dedrick* . . . could be applicable." (DE #62 at 5.) She argues that because Dr. Pepple was employed by Northeast Regional, and Defendant has established no nexus between Northeast Regional and NHC, *Dedrick* does not apply. However, the

evidence demonstrates that Dr. Pepple was also employed by FWMEP, and that FWMEP and NHC had a working relationship during the time period at issue.

Defendant proffers a copy of the Employment Agreement between FWMEP and Dr. Pepple to show that Dr. Pepple was employed by FWMEP as Assistant Director. Plaintiff attempts to raise an issue of fact as to whether the Employment Agreement was still in effect in 2009 by citing the agreement's "Expiration Date" of January 30, 2003. (DE #56-6 at ¶1(C).) However, the Employment Agreement also provides that it "shall be automatically renewed for successive periods of one (1) year each on the Expiration Date and each anniversary thereof unless either party shall give sixty (60) days' prior notice to the other party of such party's intention not to renew the Agreement." (*Id*. at ¶2.) Dr. Buchanan, the CEO of FWMEP, confirms that the Employment Agreement was still in effect in 2009, and that FWMEP employed and compensated Dr. Pepple for his services at that time. (DE #63-2.) While not using the term "employed," Dr. Pepple attests that he has "been associated with" FWMEP at all times material to Plaintiff's claim. (DE #56-1 at ¶6.) Plaintiff proffers no evidence that Dr. Pepple was no longer employed by FWMEP in 2009. The Court finds that the designated evidence conclusively establishes that FWMEP employed Dr. Pepple during the time period at issue.

Plaintiff contends that even if Dr. Pepple's Employment Agreement with FWMEP was effective in 2009, Dr. Pepple signed the Program Letter between FWMEP and NHC in his individual capacity.[3] The Program Letter identifies Dr. Pepple as the person responsible for education and supervision of resident physicians "[a]t Participating Site – [NHC]: Local Director – W. David Pepple, M.D.", and repeatedly refers to Dr. Pepple as "Site Director." (DE #56-8 at 1-3.) The Program Letter had four signatories. The president of NHC and the vice president of NHC signed it on behalf of the NHC administration. Dr. Buchanan signed the Program Letter as "Program Director and DIO" of "Sponsoring Institution – [FWMEP]." (*Id*. at 3.) Dr. Pepple signed the Program Letter on behalf of "Participating Site – [NHC] - Obstetrics" as "W. David Pepple, M.D., Site Director." (*Id*.)

According to Plaintiff, Dr. Pepple signed the Program Letter in his individual capacity as the NHC Site Director, and therefore, had a direct contract with NHC. In support, she relies upon the concurring opinion in *El Rio Santa Cruz Neighborhood Health Center, Inc. v. United States Department of Health and Human Services*, 396

---

[3] Plaintiff argues in passing that an issue of fact precludes summary judgment because Dr. Pepple attests that there is "no written contract between [NHC] and [FWMEP]." (DE #56-1 at ¶7.) Defendant proffers two written agreements between NHC and FWMEP: the MOU and the Program Letter. Plaintiff does not question the authenticity of either agreement. As such, the Court finds that no genuine issue of material fact exists as to whether NHC and FWMEP entered into the MOU or the Program Letter.

F.3d 1265 (D.C. Cir. 2005), which states that "a physician who signs his name to a professional services contract followed by 'P.C.'—manifesting his business name—is no less an individual under the FSHCAA than one who signs his name followed simply by 'M.D.'" *Id*. at 1279 (LeCraft Henderson, J., concurring). In that case, the D.C. Circuit found that the HSS had erred in concluding that certain physicians did not qualify as contractors under the FSHCAA, and thus, the HHS's denial of the physicians' FTCA coverage was arbitrary and capricious. *Id*. at 1278. The concurring opinion concluded that the HHS erred by relying on the fact that the physicians had contracted with the health center through their respective "eponymous—and solely-owned—professional corporations" to deny FTCA coverage. *Id*. The majority opinion relied upon this evidence, as well as evidence that the physicians had signed individual guarantees that "functioned as direct contracts between each physician and the Center" in satisfaction of Section 233(g). *Id*. at 1277; *see also Ismie Mut. Ins. Co. v. U.S. Dept. of Health and Human Servs.*, 413 F. Supp. 2d 954, 961 (N.D. Ill. 2006) (holding that "the term 'contractor' under the FSHCAA does not exclude an otherwise covered contract physician simply because he contracts with the covered health center through his eponymous professional corporation").

The Court finds *el Rio Santa Cruz* to be distinguishable from the instant case. Here, the Program Letter was, by its own terms,

an "Agreement between" FWMEP's residency program and NHC. (DE #56-8 at 1.) No evidence suggests that Dr. Pepple had any ownership interest in FWMEP or NHC, or had some other direct contract with NHC. Indeed, the president and CEO of NHC attests that Dr. Pepple "has never had a personal contract with [NHC]." (DE #63-1 at ¶3.) Nor does any evidence suggest that Dr. Pepple signed the Program Letter on behalf of an eponymous professional corporation.

Plaintiff contends that Dr. Pepple did not sign the Program Letter on behalf of FWMEP because the Employment Agreement identifies Dr. Pepple as the "Associate Director" of FWMEP, while the Program Letter identifies him as "Site Director" of NHC. The Court disagrees. The uncontroverted evidence indicates that Dr. Pepple signed the Program Letter as a representative/employee of FWMEP, rather than in his individual capacity. *See Evans v. Med. & Prof'l Collection Servs., Inc.,* 741 N.E.2d 795, 798 (Ind. Ct. App. 2001) (finding individual was not a party to the contract at issue where the individual signed the contract in a representative capacity for an entity, rather than in an individual capacity). The Employment Agreement identifies Dr. Pepple as "Associate Director" of FWMEP, and provides that his duties include serving as clinical instructor and coordinator of obstetrical services and education for FWMEP's family practice residency, supervising resident obstetrics, and supervising the outpatient obstetrical

clinic at NHC. Moreover, Dr. Buchanan explains that, "[p]ursuant to the Program Letter," FWMEP "designated" Dr. Pepple as "the Site Director and Local Director for the supervision of the Fort Wayne Education Program resident doctors['] in[-]patient care activities that were conducted at [NHC]." (DE #63-2 at ¶5.) NHC's President and CEO attests that Dr. Pepple was never employed by NHC, was never compensated for his services at NHC, and never had a personal contract with NHC. (DE #56-2 at ¶8; DE #63-1 at ¶3.) She also attests that Dr. Pepple and FWMEP's residency program had their own medical malpractice insurance. (DE #56-2 at ¶7.) Plaintiff provides no evidence that Dr. Pepple signed the Program Letter in his individual capacity, rather than in a representative capacity for FWMEP. Because the uncontroverted evidence demonstrates that Dr. Pepple provided services to NHC pursuant to his Employment Agreement with FWMEP, and signed the Program Letter in a representative capacity, rather than in his individual capacity, he did not have a direct contractual relationship with NHC. Because Dr. Pepple never contracted with NHC, he does not qualify as a contractor under the FSHCAA. *See Dedrick,* 200 F.3d at 747. Therefore, Defendant is not liable under the FTCA for the alleged acts and omissions of Dr. Pepple.

Claim against Deemed Employees of NHC

Defendant also argues that Plaintiff cannot prove the elements of a medical malpractice claim based on negligence of any

-14-

deemed employee of NHC. In response, Plaintiff maintains that Dr. Pepple breached the applicable standard of care. Because Plaintiff does not argue or offer any evidence that any employee of NHC breached the applicable standard of care, arguments on these points are waived. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003) ("because [plaintiff] failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned"); *Laborers' Int'l Union of N. Am. v. Caruso,* 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are deemed waived).

Plaintiff's Request for Summary Judgment

In her response brief, Plaintiff argues that she is entitled to judgment. (DE #62 at 9.) However, the record reflects that she did not file an independent motion for summary judgment. The Local Rules require a party to file a separate motion and brief if she intends to seek summary judgment. N.D. Ind. L.R. 7-1. Because Plaintiff did not file a summary judgment motion, the Court need not address whether Plaintiff is entitled to summary judgment in her favor. *Connecticut Gen. Life Ins. Co. v. Smith*, No.1:04 CV 1787, 2006 WL 839471, at *1 n.2 (S.D. Ind. Mar. 29, 2006). Moreover, Plaintiff's informal motion for summary judgment is moot because Defendant prevails on the issue of sovereign immunity.

CONCLUSION

For the reasons set forth above, Defendant United States' motion for summary judgment (DE #55) is **GRANTED.** The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**.


DATED: September 6, 2016       /s/ RUDY LOZANO, Judge
                               United States District Court